IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALOYSIUS M. OLIVER, ) | |
| No. B51183, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-00315-MJR |
| ) | |
| HOWARD HARNER, and ) | |
| RICK HARRINGTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Aloysius M. Oliver, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on the denial of his request for a kosher diet that conforms with the tenets of his religion.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d

1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, while Plaintiff was housed at Stateville Correctional Center he was "registered" with the prison as being an African Hebrew Israelite, and he received a kosher diet.[1] However, in July 2012, when he was transferred to Menard Correctional Center, Plaintiff did not receive a kosher diet, despite his religion and dietary requirements being listed in the prisoner tracking system.

A grievance and less formal requests for the proper diet were unsuccessful. In September 2013, a request for a kosher diet conforming to African Hebrew Israelite beliefs was requested and, according to documentation attached to the complaint, it was approved by Chaplain Howard Harner and Warden Richard Harrington (Doc. 1, p. 18). Nevertheless, a kosher diet was not provided (it is unknown whether this is because of Plaintiff's particular definition of what constitutes a "kosher" diet). Chaplain Harner told Plaintiff that he would have to change his religion from African Hebrew Israelite to Assemblies of Yahweh in order to receive the desired diet. Plaintiff changed his religious designation, but still did not receive a kosher diet. At Chaplain Harner's direction, Plaintiff submitted a new request for a religious diet (Doc.). Chaplain Harner balked at the diet request because a database indicated Plaintiff had received a

---

[1] Plaintiff's explanation of his dietary requirements is not entirely clear. The required diet apparently includes kelp, yeast, parsley, sesame seed, blackstrap molasses and wheat germ (*see* Doc. 1, p. 17).

vegan diet at Stateville, not a kosher diet.  Additional efforts were made to establish the dietary tenets of Plaintiff's religion, to no avail (*see* Doc. 1, pp. 19-20).  In January 2014, Chaplain Harner and Warden Harrington approved Plaintiff's request for a religious diet, but altered the nature of the diet from kosher to vegan (Doc. 1, p. 18).  The alteration was made because Plaintiff had failed to provide the specific requirements of the diet, and a vegan diet was considered an "accommodation" (Doc. 1, p. 18).

Plaintiff contends that this is a case of the Caucasian warden and chaplain denying African Americans their religious rights, when Caucasian African Hebrew Israelites, like Michael Widmer, have been granted a kosher diet.[2]  He further asserts that Harrington and Harner are engaged in a civil conspiracy, and they should also be prosecuted criminally for a hate crime.

Plaintiff notes that he has not requested a vegan diet; rather, his religion requires a kosher diet.  In addition to Plaintiff being unable to exercise his religious beliefs, eating non-kosher food has caused Plaintiff to suffer headaches, stomach aches, anxiety and weight fluctuation.  Without a kosher diet, "Plaintiff will continue to suffer potential physical injury and irreparable harm…" (Doc. 1, p. 9).  He prays for declaratory relief, compensatory and punitive damages, and injunctive relief.  Plaintiff has also filed a motion for a temporary restraining order ("TRO"), so that he can adhere to his religious beliefs, and because he, "may incur irreparable damage" to his body due to inadequate nutrition (Doc. 4, p. 2).

Based on the allegations in the complaint and the supporting documentation submitted by Plaintiff, the Court finds it convenient to divide the *pro se* action into two counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise

---

[2] *See Widmer v. Page*, No. 13-00663-MJR-SCW, Docs. 60, 79 (S.D. Ill. Nov. 7, 2013) (Order denying temporary restraining order because all Widmer had to do to receive the diet was to properly submit a form detailing the requirements of the diet).

directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Chaplain Harner and Warden Harrington, individually or in conspiracy, denied Plaintiff a kosher diet in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)); and
>
> **Count 2:** Chaplain Harner and Warden Harrington, individually or in conspiracy, denied Plaintiff the equal protection of the law guaranteed under the Fourteenth Amendment when they treated his request for a kosher diet differently than an identical request submitted by a Caucasian inmate.

The Court has not recognized a separate claim regarding Defendants' failure to respond to Plaintiff's multiple grievances because such a failure is not an independent constitutional violation. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). The Court perceives that related remarks in the complaint were made relevant to Plaintiff's efforts to exhaust administrative remedies prior to filing suit, as required under 42 U.S.C. 1997e(a). Plaintiff may consider any such claim as having been dismissed with prejudice for failure to state a claim.

Any criminal violations would have to be prosecuted by state or federal authorities in a criminal case, not a civil case.

Although it is asserted in the Plaintiff's motion for a TRO that the defendants also violated the Illinois constitution, no such claims were asserted in the complaint itself. Any such claims would have to be made in an amended complaint.

## Discussion

### Count 1

The Free Exercise Clause of the First Amendment forbids prison officials from imposing a substantial burden upon the free exercise of religion, unless the burden is reasonably related to

a legitimate penological interest. *Kaufamn v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). The claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")), essentially mirrors the First Amendment free exercise claim. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA also applies a "substantial burden" standard, but requires that the burden be the least restrictive means serving a compelling governmental interest. *Id*.

Prison officials are not the religious police, determining orthodoxy and apostasy. *See Reed v. Faulkner*, 842 F.3d 960, 963 (7th Cir. 1988); *see also Korte v. Sebelius*, 735 F.3d 654, 68283 (7th Cir. 2013). Thus, the complaint generally states colorable First Amendment and RLUIPA claims.

The allegations of conspiracy, however, are conclusory and insufficient under the *Twombly* pleading standard. "To establish [Section] 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (internal citation and quotation marks omitted); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). The complaint does not describe a meeting of the minds; rather, all Plaintiff offers is the fact that both Chaplain Harner and Warden Harrington concluded that Plaintiff was not entitled to a kosher diet. For these reasons, the conspiracy aspect of Count 1 must be dismissed without prejudice, Count 1 shall otherwise proceed.

**Count 2**

Count 2 presents an equal protection claim under the Fourteenth Amendment, based on the perceived different treatment afforded Plaintiff, who is African American, and inmate Widmer, who is Caucasian. The Equal Protection Clause forbids a state to "deny to any person

within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As a general matter, a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

The difference in treatment between Plaintiff and inmate Widmer forms the basis for a colorable equal protection claim—at least raising questions that preclude dismissal of Count 2 at this early juncture. However, as with Count 1, Plaintiff's allegation of a conspiracy is conclusory and will be dismissed without prejudice. Count 2 shall otherwise proceed.

### Motion for Temporary Restraining Order

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED.R.CIV.P. 65(b)(2). A TRO may issue without notice only if:

> (A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1).

Without expressing any opinion on the ultimate merits of Plaintiff's complaint, the Court is of the opinion that a temporary restraining order is not warranted. At first blush, the denial of a kosher diet would appear to have an immediate and irreparable impact upon Plaintiff's ability to practice his religion. However, several aspects of the complaint suggest otherwise. Similarly, the allegations regarding the physical impact upon Plaintiff's health due to the denial of a kosher diet do not show an immediate and irreparable injury.

Plaintiff has been denied a kosher diet since July 2012—more than 20 months—and he is only now seeking court intervention. Furthermore, his present vegan diet would seem to negate the possibility of violating the tenets of Plaintiff's religion, although his food selection is limited. In addition, the documentation attached to the complaint indicates that (like inmate Widmer), the only thing standing between Plaintiff and a kosher diet is a properly completed request for a kosher diet, detailing the specific dietary requirements (*see* Doc. 1, p. 18 ("Per DR425 the offender must provide the specific requirements of the diet that is requested, but as this has not occurred, as an accommodation a vegan diet is provided.")). In addition, both the complaint and the motion for a TRO refer to *potential* physical harm due to inadequate nutrition. Plaintiff has failed to sufficiently elaborate on the physical impact of his vegan diet to satisfy the relatively high standard for a TRO.

For these reasons, Plaintiff's motion for a TRO will be denied without prejudice. Because the complaint has now passed preliminary review, the defendants will be served with summons and the complaint in relatively short order. Plaintiff is free to file a motion for preliminary injunctive relief.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff Oliver's motion for a temporary restraining order (Doc. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that, for the reasons stated, the conspiracy aspects of **COUNTS 1 and 2** are **DISMISSED** without prejudice; **COUNTS 1 and 2** shall otherwise **PROCEED** against Defendants **HOWARD HARNER** and **RICK HARRINGTON**. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 5) will be decided by separate order.

The Clerk of Court shall prepare for Defendants **HOWARD HARNER** and **RICK HARRINGTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel (Doc. 6).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 17, 2014**

> s/ *Michael J. Reagan*
> **MICHAEL J. REAGAN**
> **UNITED STATES DISTRICT JUDGE**